1  JOHN D. GIFFIN, CASB NO. 89608
   JOHN COX, CASB NO. 197687
2  KEESAL, YOUNG & LOGAN
   A Professional Corporation, Suite 1500
3  Four Embarcadero Center
   San Francisco, California 94111
4  Telephone:   (415) 398-6000
   Facsimile:   (415) 981-0136
5  john.giffin@kyl.com
   kim.kane@kyl.com
6
   Attorneys for Defendants
7  MAERSK, INC. and MAERSK LINE LIMITED

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11

12 | RAIMI SHOAGA,                              ) Case No. C05-02213 SBA
                                                )
13 |              Plaintiff,                    ) **REPLY BRIEF IN SUPPORT OF**
                                                ) **DEFENDANTS MAERSK, INC. AND**
14 |     vs.                                    ) **MAERSK LINE LIMITED'S MOTION FOR**
                                                ) **SUMMARY JUDGMENT**
15 | A.P. MOLLER – MAERSK GROUP (aka A.P.       )
     Moller – Maersk s/a aka Danish A.P. MOLLER-) Date: Tuesday, November 7, 2006
16 | MAERSK GRUPPEN aka FIRMET A.P.             ) Time: 1:00 p.m.
     MOLLER), MAERSK, INC., MAERSK LINES,       ) Dept.: 3
17 | LTD.,                                      )
                                                )
18 |              Defendants.                   )
                                                )
19 | _____)

20

21         Defendants MAERSK, INC. and MAERSK LINE LIMITED respectfully submit this

22 Reply Brief in support of their Motion for Summary Judgment against Plaintiff RAIMI SHOAGA

23 ("Plaintiff").

24

25

26

27

28

## I. INTRODUCTION

Plaintiff entered a contract with a freight forwarder to ship goods from Oakland, California to Lagos, Nigeria. That contract required that Plaintiff pay all tariffs associated with the delivery of the goods. By law, Plaintiff is presumed to have knowledge of the applicable tariffs including demurrage charges.

The freight forwarder used Maersk, Inc. as an agent to obtain a bill of lading with the carrier, Target Shipping. Maersk, Inc. obtained that bill of lading on behalf of the carrier and the freight forwarder. Under the terms of that bill of lading, the carrier was required to deliver Plaintiff's goods to the port in Nigeria. In addition, the terms of the bill of lading state that the agent for the shipper is not liable for any breach of the contract.

The carrier performed its obligations under the contract by delivering Plaintiff's goods to the Nigerian Port Authority at the Port of Apapa in Lagos, Nigeria. By law the carrier had completed delivery once Plaintiff's goods were in possession of the Nigerian Port Authority. The Nigerian Port Authority detained Plaintiff's goods, and the cargo container holding the goods, for four months.

The bill of lading in this case allowed for several days of "free time" before demurrage charges started to accrue. Demurrage charges are costs, similar to rent, assessed for the loss of use of a cargo container. During the time Plaintiff's goods and the carrier's container were detained the carrier could have used that container for multiple voyages. When Plaintiff's goods and the container were released by the Nigerian Port Authority the accrued demurrage charges were approximately $10,000.

Despite the complete performance of the carrier under the bill of lading, Plaintiff breached his contract with the freight forwarder when he failed to pay the demurrage charges in Nigeria. A completely separate corporate entity in Nigeria, Maersk Nigeria, Ltd. refused to release Plaintiff's goods until he had paid the demurrage charges. Thus, the carrier performed its obligations and Plaintiff breached his obligations under the contract. Plaintiff's current meritless dispute is with Maersk, Nigeria, Ltd. and has no possible connection to the Defendants named in the Complaint.

Plaintiff alone chose to do business in Nigeria. Plaintiff alone elected not to pay the demurrage charges as required by the contract he entered into with the freight forwarder. Plaintiff refuses to bring this lawsuit in Nigeria, instead claiming that he will sue every company with the name Maersk in it until someone gives him money.

The Defendants' Motion For Summary Judgment should be granted in its entirety for four reasons. <u>First</u>, Plaintiff cannot establish a breach of contract under the undisputed facts of this case. <u>Second</u>, Plaintiff breached the contract at issue by failing to pay the demurrage charges as required. <u>Third</u>, Maersk Line Limited is a corporation that provides military sealift command support for the United States military and has no connection, contractual or otherwise, to Plaintiff's claims. <u>Fourth</u>, Maersk, Inc. never entered a contract with Plaintiff and only acted as an agent between the freight forwarder and the carrier.

Even if Plaintiff could establish a breach of contract or at least a triable issue of fact regarding an alleged breach, liability in this matter is limited to $500 pursuant to the Carriage of Goods By Sea Act ("COGSA") 46 U.S.C. § 1300 *et seq*. However, to establish any liability Plaintiff needs to file this lawsuit in Nigeria because this Court lacks jurisdiction over this dispute.

Finally, Plaintiff spends much of his Opposition addressing service of process on A.P. Moller – Maersk Group. This issue is not before the Court in this Motion and will not be fully briefed. However, Defendants assert that Plaintiff has failed to properly serve A.P. Moller – Maersk Group, and also, that there is no such corporation.

## II. LEGAL ARGUMENT

### A. Plaintiff Cannot Establish A Breach Of Contract In This Case

Plaintiff concedes that the cargo he shipped to Lagos, Nigeria was detained by the Nigerian Port Authority from August 24, 2004 through January 13, 2005. During that time period, demurrage charges accrued for the extended detention of the cargo container carrying Plaintiff's goods. According to the terms of the contract between Plaintiff and the freight forwarder, Sky-2-C Freight Systems, Inc., Plaintiff was responsible for those demurrage charges. Plaintiff failed to pay those demurrage charges so his container was not released.

- ii -  
SF447085

Plaintiff cannot establish a breach of contract in this case because the parties he contracted with performed all of their obligations under the contract. Although Plaintiff's Opposition is not entirely clear in explaining why summary judgment should not be granted, it appears that Plaintiff argues that the demurrage charges were excessive and that a "Maersk Sealand" invoice from Nigeria showing the assessed demurrage charges is proof that Maersk, Inc. and Maersk Line Limited had a contract with Plaintiff. Plaintiff is mistaken.

Under the terms of the contract, or bill of lading, the Plaintiff contracted for the transportation of his goods from Oakland, California to Lagos, Nigeria. Plaintiff's goods were delivered according to law on August 24, 2004. *See, Tapco Nigeria, Ltd. v. M/V WESTWIND*, 702 F.2d 1252, 1255-60 (5th Cir. 1983). Once Plaintiff's goods reached the port, all of the carriers' obligations under the bill of lading were complete. Had Plaintiff performed his obligations by paying the demurrage charges he would have received his goods. There was no breach by any party to the contract other than Plaintiff. Thus, Plaintiff cannot establish a breach of contract against the named Defendants in this matter or anyone else.

### B. Plaintiff Breached The Terms Of The Bill Of Lading

Even if Maersk, Inc. or Maersk Line Limited were parties to the bill of lading with Plaintiff, Plaintiff cannot prevail because he alone breached the contract. Under the terms of the bill of lading, Plaintiff was responsible for payment of demurrage fees. The bill of lading defines "Merchant" as the shipper or consignee. (See Declaration of Massoud Messkoub dated September 16, 2006 ("Messkoub"), exhibit 2, page 2). Plaintiff was the shipper of the goods and the consignee. The contract defines "Freight" to "include all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading." (Messkoub, exhibit 2, page 1). The carrier's Tariff is incorporated into the bill of lading. (Messkoub, exhibit 2, page 2). The paragraph in the bill of lading defining the carrier's Tariff states, "[A]TTENTION IS DRAWN TO THE TERMS THEREIN RELATING TO FREE STORAGE TIME AND TO CONTAINER AND VEHICLE DEMURRAGE OR DETENTION." (Messkoub, exhibit 2, page 2). "Full freight shall be payable based on particulars furnished by or on behalf of the shipper." (Messkoub, exhibit 2, page 11). "If the merchant fails to pay the freight when due he shall be liable also for any payment of service fee or

interest due on any outstanding sum…to the carrier." (Messkoub, exhibit 2, page 11-12). Thus, by the very terms of the contract at issue in this case, Plaintiff was responsible for payment of the demurrage charges which he now disputes.

Moreover, relevant case law holds that Plaintiff is presumed to have knowledge of the tariffs and is responsible for paying those tariffs including demurrage. The shipper's knowledge of the tariff rate is conclusively presumed. *Sea-Land Service, Inc. v. Murrey & Son's Co., Inc.*, 824 F. 2d 740, 742 (9th Cir. 1987). The Supreme Court has explained that although this rule is undeniably strict, and it obviously may work hardship in some cases, it embodies the policy which has been adopted by Congress to prevent unjust discrimination. *Id.* [citing to *Louisville and N. R.R. v. Maxwell*, 237 U.S. 94, 97 (1915)]. In fact, "under well-established principles of admiralty law, demurrage is extended freight. Accordingly, one who undertakes to guaranty the costs of ocean freight is secondarily liable for any demurrage incurred." *Yang Ming Marine Transport Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1093 (9th Cir. 2001). Plaintiff cannot allege breach of contract due to excessive demurrage charges he presumptively knew at the time of contract formation.

Plaintiff's failure to pay the demurrage fees in this case was a breach of the terms of the bill of lading. Accordingly, Plaintiff cannot establish a breach of contract by any other party to this action and summary judgment should be granted.

### C. Maersk Line Limited Had No Contract With Plaintiff

Plaintiff's claims against Maersk Line Limited must fail because they are an improperly named party to this action. Plaintiff claims Maersk Line Limited is a proper party because he has a copy of an invoice from Nigeria with the name "Maersk Sealand" on the top of it. Plaintiff's argument has no merit based on the terms of the bill of lading itself.

Maersk Sealand is the trade name of the carrier as clearly stated in the terms and conditions of the bill of lading. (Messkoub, exhibit 2, page 2). The official name of the carrier is A.P. Moeller – Maersk A/S trading as Maersk Line of 50 Esplanaden, DK-1098, Copenhagen K, Denmark. (Messkoub, exhibit 2, page 1). The fact that the trade name Maersk Sealand appears on a Nigerian invoice fails to establish any contract between Plaintiff and any named Defendant in this case. Maersk

Inc. and Maersk Line Ltd. did not contract with Plaintiff, and therefore are not proper parties to this action.

As previously stated, Maersk Line Limited is a separate corporation that provides military sealift command support to the United States military. In essence, Maersk Line Limited charters merchant marine vessels to provide supplies to military operations throughout the world. Maersk Line Limited is not in anyway involved in the shipment of cargo for private individuals. Accordingly, Maersk Line Limited is not a proper party to this action and summary judgment should be granted.

### D. Maersk Inc. Had No Contract With Plaintiff

Similarly, Maersk, Inc. is not a proper party to this action. Plaintiff entered a contract with Sky-2-C Freight Systems, Inc. to ship his goods from Oakland, California to Lagos, Nigeria. Sky-2-C contracted with Target Shipping to arrange for transportation of those goods. Target shipping then used Maersk, Inc. as an agent to reserve space on an ocean carrier for the transportation of Plaintiff's cargo container. Maersk, Inc.'s sole function was to reserve space on the ocean carrier which it did. Maersk, Inc. had no other obligations to Plaintiff or any other entity involved in the transport of Plaintiff's goods.

Even if Plaintiff could establish that he had a contract with agent Maersk, Inc. this claim is barred by the terms of the bill of lading. "The Merchant undertakes that no claim or allegation arising in contract…shall be made against any servant, agent, or subcontractor of the carrier which imposes or attempts to impose upon any of them…any liability." (Messkoub, page 3-4). The bill of lading also mandates that the shipper indemnify any such party if a claim is made. (Messkoub, exhibit 2, page 3). Accordingly, Plaintiff is barred from filing this claim under the terms of the contract and must indemnify the Defendants in this action for any potential liability.

### E. Liability Is Limited To $500 In This Case

Plaintiff does not refute the fact that liability in this case is limited to $500 according to the Carriage of Goods By Sea Act. He simply does not address this issue in his papers other than to incorrectly claim that even if his goods were worth only $1, he is entitled to $100 million dollars.

- v -

SF447085

REPLY BRIEF IN SUPPORT OF DEFENDANTS MAERSK, INC.'S AND MAERSK LINE LIMITED.'S MOTION FOR SUMMARY JUDGMENT – C05-02213 SBA

Accordingly, Defendants request that if the Court does not grant the Motion for Summary Judgment in its entirety that it limit liability according to law.

### F. Plaintiff Has Not Properly Served A.P. Moller – Maersk Group

Plaintiff spends much of his Opposition addressing service of process on A.P. Moller-Maersk Group. That issue is not currently before the Court, and therefore, Defendants have not briefed that issue. However, Defendants assert that Plaintiff has failed to comply with Federal Rule of Civil Procedure 4 and the Hague Convention on the service of process for several reasons. First, A.P. Moller Maersk Group is not a corporation. Second, Denmark does not recognize service of process by mail as it has refused to ratified Article X of the Hague Convention related to service by mail.

## III. CONCLUSION

For the foregoing reasons, Maersk, Inc. and Maersk Line Limited respectfully request that the Court grant their Motion for Summary Judgment as to Plaintiff's Complaint.

DATED: October 25, 2006

John D. Giffin
John Cox
KEESAL, YOUNG & LOGAN
Attorneys for Defendants
MAERSK LINE LIMITED
and MAERSK, INC.

# PROOF OF SERVICE

I, the undersigned, hereby declare that I am employed in the City and County of San Francisco. I am over the age of eighteen years and not a party to the within action. My employer and business address is Keesal, Young & Logan, Four Embarcadero Center, Suite 1500, San Francisco, CA 94111, and my telephone number is (415) 398-6000.

On the date indicated below, following ordinary business practices, I served the following document(s):

**REPLY BRIEF IN SUPPORT OF DEFENDANTS MAERSK, INC. AND MAERSK LINE LIMITED'S MOTION FOR SUMMARY JUDGMENT**

on the following party(ies) involved addressed as follows:

| | |
|---|---|
| RAIMI SHOAGA<br>1080 67TH STREET, APT. #E<br>OAKLAND, CA 94608<br>*In Pro Per* | Via Electronic Mail to<br>raimishoaga@hotmail.com and via<br>Federal Express Overnight service |

☒ **BY E-MAIL:** I caused such document(s) to be served electronically via e-mail delivery to the parties listed above.

☒ **BY FEDERAL EXPRESS OVERNIGHT:** I caused such envelope(s), fully prepaid on account, to be placed within the custody of UPS at San Francisco, California. I am readily familiar with Keesal, Young & Logan's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Keesal, Young & Logan's business practice, the document described above will be deposited in a box or other facility regularly maintained by Federal Express or delivered to an authorized courier or driver authorized by Federal Express to receive documents on the same date that it is placed at Keesal, Young & Logan for collection.

Pursuant to the Local Rules of the United States District Court, I certify that all originals and service copies (including exhibits) of the papers referred to herein were produced and reproduced on paper purchased as recycled, as defined by Section 42202 of the Public Resources Code. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 25, 2006 at San Francisco, California.

*/s/ K'Ann M. Klein*

K'Ann M. Klein